UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PATRICK A. ESPOSITO, II, | C/A No. 4:09-1543-TER |
| Plaintiff, | |
| vs. | ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## I. PROCEDURAL HISTORY

The plaintiff, Patrick A. Esposito, II, filed applications for DIB and SSI which were denied initially. These claims were not pursued any further by plaintiff. On February 19, 2004, plaintiff filed applications for DIB and SSI alleging a disability onset date of December 10, 2003. His applications were denied initially and upon reconsideration. On February 14, 2006, plaintiff submitted a Prehearing

Statement amending his alleged onset date of disability to February 22, 2004. A hearing was held before an Administrative Law Judge (ALJ) on February 16, 2006. Subsequent to the hearing, the ALJ ordered a consultative psychiatric evaluation with Dr. Nancy E. Hoevenaar. After receiving a copy of the report, plaintiff requested the appearance of Dr. Hoevenaar at the supplemental hearing for questioning either in person or by telephone. However, at the supplemental hearing, the ALJ stated that attempts to contact Dr. Hoevenaar failed. (Tr. 15). A supplemental hearing was held on January 24, 2007. Plaintiff did not testify at the supplemental hearing but his mother appeared and testified. The record was held open for plaintiff to submit additional evidence and a closing statement. Plaintiff submitted comments by letter dated March 1, 2007. The ALJ closed the record on March 23, 2007. In a decision dated April 13, 2007, the ALJ found that plaintiff was not disabled from February 22, 2004, through the date of the decision. (Tr. 24). The Appeals Council's denial of plaintiff's request for review of the ALJ's decision made it the Commissioner's final decision for purposes of judicial review under See 20 C.F.R. §§ 404.981.

## II. FACTUAL BACKGROUND

The plaintiff was born on April 13, 1972, and was thirty-three years of age at the time of his hearing before the ALJ. (Tr. 189). Plaintiff has a twelfth grade education and past relevant work experience as a material handler, lumber loader, driver, and grounds keeper. (Tr. 23).

## III. DISABILITY ANALYSIS

The plaintiff argues that the ALJ's decision is incorrect because the ALJ "erred by disregarding the opinion of plaintiff's treating psychiatrist that his condition satisfied the criteria of the listing related to his condition." (Plaintiff's brief).

In the decision of April 13, 2007, the ALJ found the following, quoted verbatim:

(1). The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

(2). The claimant has not engaged in substantial gainful activity since February 22, 2004, the amended onset date. (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

(3). The claimant has the following severe impairments: depression and a history of drug abuse. (20 CFR 404.1520(c) and 416.920(c).

(4). The claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5). After careful consideration of the entire record, I find that the claimant has no exertional limitations. He is limited to unskilled work due to his depression.

(6). The claimant is unable to perform any past relevant work.(20 CFR 404.1565 and 416.965).

(7). The claimant was born on April 13, 1972 and was 31 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date. (20 CFR 404.1563 and 416.963).

(8). The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9). Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10). Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11). The claimant has not been under a disability, as defined in the Social Security Act, from February 22, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-24).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security

Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

## IV. ANALYSIS

The parties set out a discussion in their briefs of the medical records in this case. Therefore, they will not be repeated herein.

Plaintiff argues that the ALJ erred by disregarding the opinion of his treating psychiatrist that his condition satisfied the criteria of the Listing related to this condition. (Plaintiff's brief). Plaintiff asserts that on February 6, 2006, Dr. Naylor provided a letter in which he opined that plaintiff's condition met Listing 12.04, and his records reflected no drug or alcohol abuse since prior to the alleged onset date. Plaintiff argues while the ALJ provided some analysis of the evidence relating to subparagraph "B" requirements of the Listing, he did no analysis of the evidence relating to subparagraph "C" criteria. Plaintiff contends the ALJ failed to follow the "treating physician rule" by rejecting the opinion of his treating psychiatrist, Dr. Naylor, in favor of D.D.S. psychologists. Further, plaintiff asserts the ALJ attempted to substitute his own opinion for that of plaintiff's psychiatrist and "gleaned the record for any evidence that was not supportive of the opinion of claimant's treating psychiatrist." (Plaintiff's brief, p. 11).

The Commissioner asserts that there was substantial medical evidence to support the decision of the ALJ. Defendant argues the ALJ reasonably concluded plaintiff's impairments did not meet Listing 12.04C. Defendant asserts that the ALJ expressly considered Dr. Naylor's opinion that plaintiff met Listing 12.04, and reasonably concluded that it was not supported by the other evidence of record, including "plaintiff's daily activities, the fact he was hospitalized only once during the time period at issue, and Dr. Naylor's examinations showed a generally "okay" mood and appropriate affect." (Defendant's brief, p. 15-16). Therefore, defendant argues the ALJ reasonably found that plaintiff's impairments did not meet Listing 12.04.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d) (1997). The legal standard which applies is contained in 20 C.F.R. § 404.1527. Under § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." See 20 C.F.R. §404.1527(d)(2).[1] Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Under § 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 30 C.F.R. 404.1527(d)(2) (i-ii) and (d)(3)-(5). Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188. As stated in Social Security Ruling 96-2p:

A finding that a treating source medical opinion is not well supported by medically

---

[1] This standard, of course, is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. See Coffman, 829 F.2d at 517.

7

acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Id.

Plaintiff asserts the ALJ erred in failing to evaluate and find he met Listing 12.04C and failed to follow the "treating physician rule" by rejecting the opinion of his treating psychiatrist, Dr. Naylor.

Listing 12.04 sets forth the following criteria:

Listing 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

   a. Anhedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight; or
   c. Sleep disturbance; or
   d. Psychomotor agitation or retardation; or
   e. Decreased energy; or
   f. Feelings of guilt or worthlessness; or
   g. Difficulty concentrating or thinking; or
   h. Thoughts of suicide; or
   I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
   a. Hyperactivity; or
   b. Pressure of speech; or
   c. Flight of ideas; or
   d. Inflated self-esteem; or
   e. Decreased need for sleep; or

      f.      Easy distractibility; or
      g.      Involvement in activities that have a high probability of painful consequences which are not recognized; or
      h.      Hallucinations, delusions or paranoid thinking;

Or

    3.    Bipolar syndrome with a history of episodic periods manifested by the full symtomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

    B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or
    4.    Repeated episodes of decompensation, each of extended duration;

Or

    C.    Medically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.    Repeated episodes of decompensation, each of extended duration; or
    2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

In his progress notes, Dr. Naylor, the treating psychiatrist, noted that plaintiff would be feeling better on some visits and then more depressed on other visits, he slept a lot, and had a

9

sedated feeling even when not taking a certain medication. In his notes of December 2003, Dr. Naylor noted that plaintiff's mother wanted plaintiff to return to work but he advised against plaintiff doing so. (Tr. 175). On January 28, 2004, Dr. Naylor noted plaintiff being more depressed and that "[a]gain, I recommended he not go back to work..." (Tr. 173). However, plaintiff returned to work and was admitted to the hospital after having suicidal thoughts on February 18, 2004. Dr. Naylor submitted a report dated January 24, 2005, in which he stated the following:

> Patient is a 33 year old male living with his parents in Goose Creek. He has a long history of mental depression. He has had 2 psychiatric hospitalizations in the past. He presently has mood disorder and depression. He is currently being treated for medical management on a monthly basis. Initially he had difficulty tolerating his medications and his mood has just recently been more stable with his medication. He is unable to handle any stress and unable to make social and personal adjustments. He is unable to work due to his mental condition. He cannot support himself, and he is unable to handle his finances. The patient has been treated regularly since December 2003 and I do not see where he would be able to work at any time in the near future.

(Tr. 161).

Dr. Naylor also completed a "Mental Impairment Questionnaire-Listing" form on February 6, 2006, noting his monthly treatment of plaintiff since December 11, 2003, and opining that plaintiff met Listing 12.04C. Dr. Naylor opined that plaintiff had extreme restrictions in activities of daily living, had marked difficulties in maintaining social functioning, had marked deficiencies of concentration, persistence or pace, and would have four or more repeated episodes of decompensation within 12 month period, each of at least two weeks duration. (Tr. 151). Dr. Naylor further concluded that plaintiff has "Medically documented history of a chronic organic mental, schizophrenic, etc. or affective disorder of at least 2 years' duration that has caused more than a

minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate" and "current history of 1 or more year's inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (Tr. 152). Dr. Naylor noted that plaintiff's impairment lasted or can be expected to last at least twelve months and plaintiff is not a malingerer. (Tr. 152). On October 25, 2006, Dr. Naylor submitted a statement in which he said he first saw plaintiff in December 2003 and ". . . there has not been an indication of Mr. Esposito relapsing with drugs. In 02/04, Dr. Naylor admitted plaintiff to the hospital because of suicidal ideations. He has continued to have periods of decompensation errors in the absence of substance use." (Tr. 139).

> The ALJ discussed the reports and opinions as follows:
>
> I find, based upon a close review of the medical evidence, that there is a medically documented depression. This syndrome has resulted in the claimant having: mild restrictions in his activities of daily living (does household chores, collects figurines, drives, reads, watches television, listens to radio, goes to grocery store); moderate limitations in his social functioning (has no friends, lives with parents, socializes with sister); and mild deficiencies of his concentration, persistence, or pace (on April 10, 2006, claimant stated he was able to concentrate and complete tasks; drives; uses a computer; watches television; reads). Since his amended alleged onset date of disability of February 22, 2004, there have been no episodes of deterioration or decompensation in work or work-like settings. Additionally, the claimant was not found to suffer from: a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate, a history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement; or a complete inability to function independently outside the area on one's home[sic].
>
> Thus, I find that the claimant does not meet this Listing [12.04].

(Tr. 18-19).

The ALJ further concluded as follows:

> Regarding the claimant's severe impairment of depression and his history of drug abuse, on December 11, 2003, the claimant was initially examined by Dr. Peter Naylor of Charleston Psychiatry. The mental status examination showed his mood was depressed and his affect constricted. He had no delusions or hallucinations. He was not suicidal. He had no problems with his memory. He had fair insight and judgment.
>
> The claimant was hospitalized at the Institute of Psychiatry at the Medical University of South Carolina from February 18, 2004, to February 25, 2004. He was voluntarily admitted secondary to suicidal ideations. It was noted that the claimant had a long-time history of marijuana use since the age of 12. It was noted that the claimant's long history of marijuana use daily was a likely contributing factor to his depression. His condition was stable on discharge and he was to follow-up with Dr. Naylor and substance dependence treatment. He was placed on no activity restrictions. His diagnosis was major depressive disorder, marijuana dependence, and his Global Assessment of functioning was 65 with mild symptoms or some difficulty in social, occupational, or school functioning.
>
> The claimant returned to Dr. Naylor, and on May 15, 2004, his affect was appropriate and he had no suicidal ideation, delusions, or hallucinations. . . .

(Tr. 20).

As previously stated, the ALJ ordered a consultative psychiatric evaluation by Dr. Nancy E. Hoevenaar subsequent to the first hearing. Plaintiff's counsel requested that Dr. Hoevenaar be present at the supplemental hearing for questioning either in person or by telephone. However, the ALJ stated at the hearing that they had been unable to contact her and were unable to locate her. (Tr. 218). Therefore, the ALJ stated that he would give limited weight to Dr. Hoevenaar's consultative psychiatric examination. (Tr. 22). In the decision, the ALJ found the following in regard to Dr. Hoevenaar's report:

> On April 10, 2006, the claimant underwent a consultative psychiatric evaluation by Dr. Nancy E. Hoevenaar. The claimant denied suicidal/homicidal thoughts and hallucinations. He denied current alcohol or drug use. The claimant reported

psychiatric hospitalizations in 1993 and in 1997 and the most recent being 2004. Dr. Hoevenaar noted several large excoriated areas across the claimant's forehead and the bridge of his nose. The claimant reported that when nervous he picked at his skin. The mental status examination showed the claimant was alert and oriented in all spheres. His concentration was good. His affect was euthymic. His memory was intact. He recalled three of three objects after five minutes. He maintained good eye contact and he had logical and goal-directed thoughts with no signs of psychosis. His judgment and insight were intact. The claimant reported he helped with housework, used the computer, drove, listened to music, collected figurines, maintained his own personal hygiene, and was able to concentrate and complete tasks. His diagnoses were major depression in remission per claimant, cannabis dependence in remission per claimant, crystal methamphetamine abuse in remission per claimant, and anxiety disorder not otherwise specified. His Global Assessment of Functioning was 60 with moderate difficulty in social, occupational, or school functioning. Dr. Hoevenaar completed a medical source statement noting the claimant had moderate limitations in the ability to: carry out detailed instructions; make judgments on simple-work-related decisions; interact appropriately with the public; respond appropriately to work pressures in ususal work setting; and respond appropriately to changes in a routine work setting.

(Tr. 21).

With respect to Dr. Naylor's opinion, the ALJ concluded as follows:

The claimant continued follow-up treatment with Dr. Naylor, and from May 3, 2006, through February 20, 2007, mental status examinations continued to show an appropriate affect, no suicidal ideation, hallucinations, or delusions. Additionally, there were no changes in his medical regimen.

Thus, I find that the claimant's severe impairment of depression is consistent with the finding that he has no exertional limitations but must be limited to unskilled work due to the depression. . . .

. . .

I give little weight to Dr. Naylor's assessment of February 6, 2006. Dr. Naylor reported that the claimant had a bipolar disorder and that he met Listing 12.04. Dr. Naylor indicated the claimant had an extreme limitation in activities of daily living and that he had experienced four or more episodes of decompensation within 12 month period, each at least two weeks duration. However, a review of the clinical evidence shows that the claimant has not been hospitalized since February 2004. Furthermore Dr. Naylor's records show that the claimant's mood has been generally okay and his affect appropriate. Thus, I find that Dr. Naylor's opinion is not well supported and is not entitled to controlling weight. . . .

13

> . . .
>
> The claimant has depression and a history of drug abuse, but none since his amended alleged onset date of disability of February 22, 2004. There have been several mental health hospitalization[s] but the last hospitalization was in February 2[0]04. During the hospitalization the claimant was abusing drugs. There have been no hospitalizations since the claimant stopped drug abuse.

(Tr. 21, 22-23).

The undersigned finds that there is no conflicting medical evidence by an examining or treating physician/psychiatrist cited by the ALJ which could justify ignoring the opinion of Dr. Naylor, the treating psychiatrist. Regardless of the weight the ALJ afforded the opinion of the one time evaluation by the consulting psychiatrist, Dr. Hoevenaar, it does not support the ALJ's decision. In fact, it may support the opinion of Dr. Naylor with reference to Listing 12.04C(2). For instance, Dr. Hoevenaar stated that "[s]tressor are moderate and are due to the patient's inability to function in an employment situation and his anxiety and chronic suicidal thoughts, as well as his substance abuse, which he claims is in remission." (Tr. 131). Further, Dr. Hoevenaar summarized as follows:

> Mr. Esposito appears to be somewhat developmentally delayed in terms of his emotional development, i.e. he still lives with his parents and does not appear to have made the usual adjustment to adult life that one would expect with a 33-year-old man, such as marriage, family and employment. Mr. Esposito was hospitalized as recently as 2004. . . the patient does appear to have significant problems with a variant of trichotillomania in the form of picking at his skin and scalp. Effexor does not appear to be helping this in this patient and he may need a more extensive behavioral program or other medication to address this issue. Mr. Esposito's prognosis is guarded given his past history of multiple hospitalization and his chronic use of substances.

(Tr. 132).

Dr. Hoevenaar completed a "Medical Source Statement of Ability to do Work-Related

Activities (Mental)" in which she found that plaintiff's ability to understand, remember, and carry out instructions is affected by the impairment, that he has moderate restrictions in his ability to carry out detailed instructions, ability to make judgments on simple work-related decisions and "patient's performance on mental status exam, frequently resorting to drug use or suicidal thoughts when stressed, general ability to function as an adult . . . " (Tr. 133). She further noted that plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting is affected by the impairment. She stated that plaintiff is moderately restricted in his ability to interact appropriately with the public, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (Tr. 133). Dr. Hoevenaar concluded that he has other abilities affected by the impairment like his energy effects his "ability to work full days." Id. Plaintiff's counsel was not able to question Dr. Hoevenaar at the supplemental hearing because she could not be located. Based on the form that was submitted to Dr. Hoevenaar by the SSA for completion, she was not asked specifically to address the criteria of Listing 12.04C.

There is no contradictory evidence from an examining or treating psychiatrist put forth by the ALJ to completely ignore the disability determination and functional assessment of plaintiff by his treating psychiatrist. As set out above, parts of the report from the one-time evaluation by the consultative examiner, Dr. Hoevenaar, lends support to Dr. Naylor.

The ALJ relies on the opinions of the physicians employed by the State Disability Determination Services ("DDS physicians/consultants") in not giving controlling weight to the treating psychiatrist's opinion. In Edwards v. Astrue, 2009 WL 764882 (D.S.C. March 23, 2009), the court stated the following:

> . . . reliance on such non-examining opinions is not error as a matter of law. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir.1984)

>     (testimony of non-examining physician can be relied upon when consistent with the record, and when medical expert testimony conflicts, ALJ decision siding with the nonexamining physician should stand); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir.1986) (opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner). The Fourth Circuit has said that "the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when *totally contradicted* by other evidence in the record." Gordon, 725 F.2d at 235 (emphasis added). However, "a non-examining physician can be relied upon when it is consistent with the record." Id. (*citing* Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir.1971))."

Edwards, supra.

The DDS medical consultants completed assessments based solely on the review of records. These assessments were performed in May 2004, and October 2004, less than a year after the alleged amended onset date. Therefore, the DDS consultants only had some of plaintiff's records and did not have Dr. Naylor's completed notes, assessment, and medical opinion. The ALJ's rejection of Dr. Naylor's medical opinion in favor of the opinions of state agency medical consultants who had never seen or examined the plaintiff without adequate explanation constitutes reversible error. See Thompson v. Astrue, 2008 WL 943169 (D.S.C. April 7, 2008).

Furthermore, the ALJ did not provide a proper analysis with respect to Listing 12.04C. The ALJ fails to show why Dr. Naylor's opinion should not be given controlling weight on the issue of Lisitng 12.04C and, in fact, fails to provide a proper analysis under 12.04C. The ALJ conclusively stated "the claimant was not found to suffer from: a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate, a history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for

such an arrangement; or a complete inability to function independently outside the area of one's home." (Tr. 18-19). This is not a proper analysis. At the hearing, plaintiff testified that in December 2003, his parents were urging him to try and return to work but Dr. Naylor did not recommend it. (Tr. 193). However, plaintiff testified that he ultimately returned to work with the intention to continue to work. However, in February plaintiff testified he became "stressed out from work," and he "just broke down." (Tr. 194). At that time, he was admitted to the hospital. (Id.). He testified that if he tried to return to work it would result in another break down. (Tr. 195). Plaintiff further testified that he had not used any illegal drugs since his arrest in December 2003, other than an attempt to hurt himself by taking an excessive amount of Xanax. (Tr. 196-197). Plaintiff testified that he had a friend at one time that would come and take him to ride and tried to get him out of the house but that friend has since moved. (Tr. 199). Plaintiff testified he no longer has any friends and only socializes with his parents and sister. (Tr. 198, 200). Plaintiff testified that he will go shopping with his parents or sister but not on his own because he becomes too nervous. (Tr. 201-202). When asked if he were able to just set up another place of his own without any financial considerations, could he function, plaintiff testified that he could not because he needs the support of his family and cannot handle being by himself. Plaintiff's mother testified that she fixes her son's medicine for him that is dated through the week which he takes as prescribed. (Tr. 208-209). His mother also testified that she sees that he gets to his appointments with Dr. Naylor and that his prescriptions are refilled, but has only seen a little improvement. (Tr. 209). His mother also testified that plaintiff stays in his room most of the time and appears to be sleeping about ninety percent of the time he is in his room. (Tr. 209). She testified that she, her husband, and plaintiff's sister take him out, but he does not go out by himself. Even though she encouraged him to return to work in the past which caused him to

17

have a break down, she no longer believes he is at the point to attempt working again. (Tr. 211). At the supplemental hearing, plaintiff's mother testified that plaintiff had lived with her since his last hospitalization. (Tr. 221). Further, she testified that she had seen him when he was under the effects of drugs or alcohol before December 2003, but that he has not used any alcohol or drugs since moving back in with them. (Tr. 221-222). She also testified that she believed that if plaintiff had been under the influence, she would be able to tell. (Tr. 222). She testified that plaintiff was still seeing Dr. Naylor and nothing had changed since the previous hearing. (Tr. 222-223).

Furthermore, the ALJ concluded that, while there had been several mental health hospitalizations, the last hospitalization was in February 2004, and plaintiff was abusing drugs. However, the hospital discharge summary discusses plaintiff's previous drug abuse but does not state that plaintiff was abusing drugs at the time of admission. Plaintiff submitted a letter from Dr. Naylor dated October 25, 2006, stating there had been no indication of plaintiff relapsing with drugs since he began seeing plaintiff in December 2003. Dr. Naylor further stated "[i]n 02/04 he was admitted to the hospital because of suicidal ideations. He has continued to have periods of decompensation errors in the absence of substance use." (Tr. 139). Therefore, the ALJ's conclusion with respect to this finding was not supported by substantial evidence as there was no evidence that there was habitual abuse since the alleged onset date of February 22, 2004.

Based on the above, it is not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision without a proper analysis with regard to the treating physician's opinion and of Listing 12.04C.

Therefore, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for

further proceedings in accordance with this opinion.

AND IT IS SO ORDERED.

s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge

September 16, 2010
Florence, South Carolina